## In re Gerald Ropp

[541 A.2d 86]

No. 87-602

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed January 22, 1988

*Steve Dunham*, Public Defender, St. Albans, for Petitioner-Appellant.

*Howard E. VanBenthuysen*, Franklin County State's Attorney, St. Albans, for Respondent-Appellee.

**Dooley, J.** Petitioner appeals from denial of a petition for a writ of habeas corpus, following his arrest on a Governor's warrant issued in response to an extradition demand from Wisconsin for alleged criminal nonsupport in that state. We reverse and remand.

The present petition follows denial of an earlier one sought after Mr. Ropp was arrested without a warrant pursuant to 13 V.S.A. § 4954 but before the Governor of Wisconsin had issued a requisition warrant seeking extradition. *In re Ropp (Ropp I)*, 149 Vt. 154, 541 A.2d 84 (1987). In that case petitioner had argued that he had not been in Wisconsin during the period involved. We held, however, that the evidence in the record did not contradict the allegations that he had committed the crime alleged while he was in Wisconsin, as set forth in the affidavits supporting the complaint. *Id.* at 156, 541 A.2d at 86 (citing *Lovejoy* v. *State*, 148 Vt. 239, 244, 531 A.2d 921, 924 (1987)).

Pending our determination in *Ropp I*, on December 3, 1987, the Wisconsin requisition warrant issued seeking extradition of petitioner as a fugitive from justice, based on the same information underlying the first arrest and stating specifically "that the fugitive was present in Wisconsin when the alleged crime was committed but has since fled Wisconsin and is now in Vermont." The Governor of Vermont issued her rendition warrant on December 16, 1987 stating that petitioner "has fled from justice in that State [Wisconsin] and taken refuge in the State of Vermont." The present petition was filed, and the matter was heard in the Franklin Superior Court on December 23, 1987. The parties are in agreement that during the hearing below petitioner offered to prove that he had not been in Wisconsin during the period in question, and further agree that the court declined to receive the evidence. The trial court denied the petition, and this appeal followed.

Having this time tendered evidence of his whereabouts to the trial court, petitioner contends once again that he was not in the State of Wisconsin during the period which forms the basis for the nonsupport charge and therefore cannot be a fugitive from justice. See *Matthews* v. *People*, 136 Colo. 102, 106-07, 314 P.2d 906, 908-09 (1957); *Ex parte King*, 236 S.W.2d 806, 807 (Tex. Crim. App. 1951). His offer to supply the evidentiary support missing in *Ropp I* raises the question of the legal sufficiency of the rendition warrant in the present appeal.

■ Extradition sought as a matter of right by a demanding state is based on Article IV, § 2, cl. 2 of the United States Constitution, which requires that the accused shall have fled from justice in the demanding state. See *Roberts* v. *Reilly*, 116 U.S. 80, 97 (1885). Thus, the presence of the accused in the demanding state is a constitutional prerequisite. See *Hyatt* v. *Corkran*, 188 U.S. 691, 709-11 (1903). It is not satisfied where, as in the present case, the crime is committed in the demanding state as a matter of substantive law, but where the accused contends he was not present in the state at the time the alleged offense occurred.

■ Extradition under the United States Constitution is not the only method of extradition. We pointed out in *Ropp I*, 149 Vt. at 156 n.3, 541 A.2d at 86 n.3, that even if petitioner had not been present in Wisconsin when the felony nonsupport occurred, he might still be subject to extradition under 13 V.S.A. § 4946, a provision of the Uniform Criminal Extradition Act not based on the Constitution, which has been adopted in Vermont and Wisconsin, as well as nearly all of the other states. Section 4946 provides for extradition of those charged in another state "with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority makes the demand . . . notwithstanding that the accused was not in that state at the time of the commission of the crime, and has not fled therefrom." In such event the Governor of the rendering state—Vermont in this case—may use her discretion to grant the extradition request, but is not required to do so by the Constitution. *Matthews*, 136 Colo. at 107-08, 314 P.2d at 909.

While Wisconsin might have sought that Vermont extradite petitioner under 13 V.S.A. § 4946, instead of or in addition to § 4943 (Vermont's provision for extradition of a fugitive from justice under the Constitution), it clearly did not do so in this case. Nor was the Vermont Governor's rendition warrant based on her discretionary power under § 4946, but rather on her duty to respond to a demand from a fellow governor to extradite a person accused of committing a crime in that state and then seeking refuge in Vermont.

■ Petitioner rightly contends that if he was arrested as a fugitive from justice, he had the right to demonstrate that he was in fact not a fugitive from justice because he had not been in Wisconsin at the commencement of the alleged nonsupport. *People* v. *Swisher*, 60 Ill. App. 3d 452, 453, 376 N.E.2d 797, 798 (1978); *Peo-*

*ple ex rel. Hall* v. *Casscles,* 51 A.D.2d 623, 624, 378 N.Y.S.2d 813, 816, *appeal dismissed,* 38 N.Y.2d 1006, 348 N.E.2d 918, 384 N.Y.S.2d 442 (1976). He further contends, and we agree, that if he had been able to demonstrate his nonfugitive status, the current warrant would be invalid because it states on its face that it was issued as a matter of constitutional obligation in response to the Wisconsin demand. The fact that the Governor might have exercised her discretion in favor of returning petitioner to Wisconsin under § 4946 does not validate the warrant. See *Layher* v. *Van Cleave,* 171 Colo. 465, 467-68, 468 P.2d 32, 33-34 (1970). The trial court should have considered petitioner's offer of evidence that he was not a fugitive from justice in a constitutional sense, and its failure to do so is reversible error. See *Clark* v. *Warden,* 39 Md. App. 305, 312, 385 A.2d 816, 819 (1978).

██ The State argues that the trial court's decision can be upheld, despite the above analysis, because a different statutory scheme applies to interstate nonsupport cases. Specifically, the State maintains that "[w]hether Mr. Ropp was in the state of Wisconsin during the time period supporting the charges against him does not matter since, under Title 15[,] Chapter 7, Subchapter 2, the whereabouts of someone wanted for nonsupport is specifically made irrelevant in an extradition from another state." The provision recited by the State is 15 V.S.A. § 391, and it provides:

> The governor of this state may:
>
> (1) demand of the governor of another state the surrender of a person found in that state who is charged criminally in this state with failing to provide for the support of any person; or
>
> (2) surrender on demand by the governor of another state a person found in this state who is charged criminally in that state with failing to provide for the support of any person. Provisions for extradition of criminals not inconsistent with this chapter apply to the demand even if the person whose surrender is demanded was not in the demanding state at the time of the commission of the crime and has not fled therefrom. The demand, the oath, and any proceedings for extradition pursuant to this section need not state or show that the person whose surrender is demanded has fled

from justice or at the time of the commission of the crime was in the demanding state.

The section on which the State relies is a part of the Uniform Reciprocal Enforcement of Support Act (URESA), which is designed to promote civil enforcement of support orders where the spouse under a support mandate is not present in the state where the decree was issued. See Commissioners' Prefatory Note to 1950 Act, URESA 9B U.L.A. 556 (1968) (note describes original purposes behind the act which remain for the current version). Section 391 of Title 15 is based on Title II of URESA and is to be construed together with the Uniform Criminal Extradition Act. See *In re Pace*, 250 Ga. 276, 276, 297 S.E.2d 255, 256 (1982). There is no inconsistency between the two enactments. Both 13 V.S.A. § 4946 and 15 V.S.A. § 391(2) provide that the Vermont Governor *may* extradite a nonfugitive charged with a crime in another state, with the latter section, however, limited to those "charged criminally in that state with failing to provide for the support of any person," while the former applies to any act in a state other than the demanding jurisdiction resulting in a crime in that jurisdiction. Thus, both 13 V.S.A. § 4946 and 15 V.S.A. § 391 give the Governor discretion in nonsupport cases that fall beyond the constitutional command. The State's argument that § 391 eliminates the Governor's discretion is plainly inconsistent with its terms.

Not only is the State's contention that 15 V.S.A. § 391 mandates extradition in every criminal nonsupport case wrong, but on the contrary, the URESA provision shows the particular care the Legislature expected the Governor would exercise in determining whether to extradite nonfugitives in cases of nonsupport. 15 V.S.A. § 392(a) allows the Governor to request that a state's attorney determine that civil URESA proceedings "would be of no avail" before deciding whether or not to extradite. Thus, the Legislature understood that a Governor would first look to the alternative remedy of civil enforcement of outstanding support orders before considering extradition for criminal processing in the demanding state. URESA's main concern is not with extradition but with payment of child support orders, and under 15 V.S.A. § 391, the Governor is expected to weigh that concern against the interest of the demanding state in criminal prosecution — a balancing process not specifically required under 13 V.S.A. § 4946. Of

course she can ultimately decide to extradite, despite the possibility of an alternative remedy, and how or why she exercises her discretion in a particular case is beyond the concern of the judicial branch. The significant point is that 15 V.S.A. § 391 can hardly be read to narrow or eliminate her discretion where extradition is sought for criminal nonsupport and the accused was not present in the demanding state when the offense occurred.

The State contends that the conclusions we reach today effectively reverse *Deyo* v. *Snelling*, 139 Vt. 341, 428 A.2d 1117 (1981), where this Court stated that our inquiry should not include an examination of the demanding state's laws or judicial proceedings, but should be "limited to an examination of whether the extradition documents satisfy the Act's demands." *Id.* at 343, 428 A.2d at 1119. We have examined the extradition documents, and they alone are the basis for our holding. The rendition warrant states on its face that petitioner is a fugitive from justice, and he sought below to present evidence countering this most essential allegation in a warrant seeking extradition under Article IV of the Constitution. In order to confirm the accuracy of the extradition documents, the trial court should have allowed petitioner to do so. If he shows he was not in Wisconsin at the time of the offense, the extradition documents will not "satisfy the Act's demands." *Id.*

Nothing we conclude relates in the least to petitioner's status as an accused felon under Wisconsin law. He stands charged of felony nonsupport in that state, and petitioner asserts no deficiency in the documents supporting Wisconsin's requisition warrant under 13 V.S.A. § 4943. Nor should our holding be construed to raise mere technical errors in the extradition documents to the level of reversible error. *Bryan* v. *Conn*, 187 Colo. 275, 278, 530 P.2d 1274, 1275 (1975); *Hill* v. *Blake*, 186 Conn. 404, 409, 441 A.2d 841, 844 (1982); *People ex rel. Lance* v. *Elrod*, 21 Ill. App. 3d 786, 786, 315 N.E.2d 602, 602 (1974). Even a variance between charging documents that assert the presence of the accused in the demanding state, and an extradition warrant that clearly charges an act in another state resulting in a crime in the demanding state will not be fatal in most jurisdictions. *State* v. *Soto*, 423 So. 2d 362, 365 (Fla. 1982); *Ex parte Harrison*, 568 S.W.2d 339, 342 (Tex. Crim. App. 1978). But it is another matter to argue, as the State does, that the contents of an extradition warrant are a mere

form and that the liberty of the accused can be limited whether or not the warrant executed is supported by the facts.

*The judgment below is reversed, and the matter remanded to the Franklin Superior Court for a rehearing of petitioner's cause forthwith consistent with this opinion.*